DONALDSON, Judge.
Hope Kirby appeals from an order of the Lauderdale Circuit Court ("the trial court") dismissing her tort-of-outrage claim against Jack's Family Restaurants, LP ("Jack's"). The order did not dismiss all of Kirby's claims against all the defendants, but it was certified as final and appealable pursuant to Rule 54(b), Ala. R. Civ. P.[1] Because we find that the order was not appropriately certified as final, we dismiss the appeal.
The procedural history relevant to this appeal can be summarized as follows. Kirby, who had been an employee of Jack's, filed a complaint in the trial court seeking benefits under the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975 ("the Act"), and seeking damages for the tort of outrage and retaliatory discharge. Kirby named as defendants Jack's, the Alabama Self-Insured Worker's Compensation Fund, Employer's Claim Management, Inc., and Directions Management Services, Inc. (hereinafter referred to collectively as "the defendants"). Jack's filed a motion pursuant to Rule 12(b)(6), Ala. R. Civ. P., seeking to dismiss Kirby's claim asserting the tort of outrage. Thereafter, the other defendants also filed similar motions to dismiss. Kirby, with leave of the trial court, filed two amended complaints attempting to support her claim asserting the tort of outrage. On October 5, 2016, after a hearing, the trial court granted the defendants' motions to dismiss. On October 12, 2016, in response to a motion filed by Jack's seeking to clarify the October 5, 2016, dismissal order, the trial court entered an order dismissing Kirby's tort-of-outrage claim asserted against Jack's and clarified that the dismissal was directed to the tort-of-outrage claim asserted in Kirby's second amended complaint. The trial court certified that order as final pursuant to Rule 54(b). On November 22, 2016, Kirby timely filed a notice of appeal to the supreme court. Thereafter, the supreme court deflected the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
"Although neither party has raised the issue of the appropriateness of *610 the [trial] court's Rule 54(b), Ala. R. Civ. P., certification of its ... order [dismissing Kirby's tort-of-outrage claim], this Court may consider that issue ex mero motu because the issue whether a judgment or order is sufficiently final to support an appeal is a jurisdictional one." Firestone v. Weaver, [Ms. 1151211, May 12, 2017] --- So.3d ----, ---- (Ala. 2017).* "This court has appellate jurisdiction over appeals from judgments that are final." Perry v. Perry, 92 So.3d 799, 800 (Ala. Civ. App. 2012).
"An order that does not dispose of all claims or determine the rights and liabilities of all the parties to an action is not a final judgment. See Stone v. Haley, 812 So.2d 1245 (Ala. Civ. App. 2001). In such an instance, an appeal may be had 'only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.' See Rule 54(b), Ala. R. Civ. P.; Baker v. Johnson, 448 So.2d 355, 358 (Ala. 198[3])."
Eubanks v. McCollum, 828 So.2d 935, 937 (Ala. Civ. App. 2002). Despite a trial court's certification of an order as final,
" '[n]ot every order has the requisite element of finality that can trigger the operation of Rule 54(b).' Goldome Credit Corp. v. Player, 869 So.2d 1146, 1148 (Ala. Civ. App. 2003) (citing Moss v. Williams, 747 So.2d 905 (Ala. Civ. App. 1999) ). ' " 'Certifications under Rule 54(b) should be entered only in exceptional cases and should not be entered routinely.' " ' Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala. 2004) (quoting State v. Lawhorn, 830 So.2d 720, 725 (Ala. 2002), quoting in turn Baker v. Bennett, 644 So.2d 901, 903 (Ala. 1994) ).
" ' " ' "Appellate review in a piecemeal fashion is not favored." ' " ' Id. (quoting Goldome Credit Corp. v. Player, 869 So.2d 1146, 1148 (Ala. Civ. App. 2003), quoting in turn Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So.2d 190, 192 (Ala. Civ. App. 1999), quoting in turn Brown v. Whitaker Contracting Corp., 681 So.2d 226, 229 (Ala. Civ. App. 1996) ).
" ' "It is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought after the [trial] court renders its decision on the remaining claims or as to the remaining parties.
" ' "An appellate court also should not hear appeals that will require it to determine questions that remain before the trial court with regard to other claims." '
" Centennial Assocs., Ltd. v. Guthrie, 20 So.3d 1277, 1281 (Ala. 2009) (quoting 10 Charles Alan Wright et al., Federal Practice and Procedure § 2659 (1998) )."
Lund v. Owens, 170 So.3d 691, 695 (Ala. Civ. App. 2014).
The trial court's October 12, 2016, order dismissing Kirby's tort-of-outrage claim asserted against Jack's found, in part, that Kirby's "allegations fail to rise to the level of a cognizable claim of outrage under Alabama law and, therefore, [Kirby] has failed to state a claim for Outrage." That order did not dispose of Kirby's claim seeking workers' compensation benefits or Kirby's claim alleging retaliatory discharge. We note that those claims were not severed pursuant to Rule 21, Ala. R. Civ. P., but remain pending in the same case.
Rule 54(b) certification is not proper when the unadjudicated claims "are so closely intertwined [with those adjudicated in a judgment that has been certified as final so] that separate adjudication *611 would pose an unreasonable risk of inconsistent results." Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala. 1987). Furthermore, Rule 54(b) certification is improper "when at least some of the issues presented in the claims still pending in the trial court [are] the same as the issues presented in the claims addressed in the judgment on appeal and ' "[r]epeated appellate review of the same underlying facts would be a probability in [the] case." ' " Lund, 170 So.3d at 696 (quoting Patterson v. Jai Maatadee, Inc., 131 So.3d 607, 611 (Ala. 2013), quoting in turn Smith v. Slack Alost Dev. Servs. of Alabama, LLC, 32 So.3d 556, 562 (Ala. 2009) ).
We must, therefore, determine whether Kirby's tort-of-outrage claim is "closely intertwined" with the remaining claims alleging retaliatory discharge and seeking workers' compensation benefits. "In order to recover [damages for the tort of outrage], a plaintiff must demonstrate that the defendant's conduct '(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.' " Potts v. Hayes, 771 So.2d 462, 465 (Ala. 2000) (quoting Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38, 44 (Ala. 1990), citing in turn American Road Serv. Co. v. Inmon, 394 So.2d 361 (Ala. 1981) ).
As explained above, one of Kirby's claims that remains pending in the trial court is a claim alleging retaliatory discharge.
"In order for an employee to establish a prima facie case of retaliatory discharge the employee must show: 1) an employment relationship, 2) an on-the-job injury, 3) knowledge on the part of the employer of the on-the-job injury, and 4) subsequent termination of employment based solely upon the employee's on-the-job injury and the filing of a workers' compensation claim."
Alabama Power Co. v. Aldridge, 854 So.2d 554, 563 (Ala. 2002).
In support of both her retaliatory-discharge claim and tort-of-outrage claim in her amended complaint, Kirby relies on facts and circumstances surrounding her injury and termination. It appears that Kirby must rely on the same set of underlying facts to support her claim alleging retaliatory discharge and to prove her claim asserting the tort of outrage. In a recent opinion, our supreme court, in concluding that a trial court had exceeded its discretion in certifying a summary judgment in favor of one of multiple defendants as final pursuant to Rule 54(b), noted that the plaintiff's claims against several defendants in that case, which included conspiracy and the tort of outrage, among others, arose out of the same set of facts, that there was "a probability of '[r]epeated appellate review of the same underlying facts,' " and that "piecemeal adjudication of the claims against the defendants pose[d] an unreasonable risk of inconsistent results." Firestone v. Weaver, --- So.3d at ---- (quoting Smith v. Slack Alost Dev. Servs. of Alabama, LLC, 32 So.3d 556, 562 (Ala. 2009) ).*
Because it appears that Kirby must rely on the same set of underlying facts to prove her claim asserting the tort of outrage and to support her claim alleging retaliatory discharge, there is "a probability of '[r]epeated appellate review of the same underlying facts,' " ibr.US_Case_Law.Schema.Case_Body:v1">id.,* if we were to hold that the trial court's Rule 54(b) certification was appropriate in this case. Kirby's tort-of-outrage and retaliatory-discharge claims are "so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results." Branch, 514 So.2d at 1374. Accordingly, we conclude that the trial court exceeded its *612 discretion in certifying its order dismissing Kirby's tort-of-outrage claim asserted against Jack's as final pursuant to Rule 54(b). As a result, we dismiss the appeal as having been taken from a nonfinal judgment.
APPEAL DISMISSED.
Thompson, P.J., and Moore, J., concur.
Thomas, J., concurs in the result, with writing, which Pittman, J., joins.
THOMAS, Judge, concurring in the result.
Although I agree that the Rule 54(b), Ala. R. Civ. P., certification of the order dismissing Hope Kirby's claim asserting the tort of outrage against Jack's Family Restaurants, LP ("Jack's"), is improper, I reach that conclusion using a different analysis than that expressed by the majority. Our supreme court has set out the considerations relevant to a determination whether a Rule 54(b) certification should be set aside. See Lighting Fair, Inc. v. Rosenberg, 63 So.3d 1256, 1263-64 (Ala. 2010).
"In considering whether a trial court has exceeded its discretion in determining that there is no just reason for delay in entering a judgment, this Court has considered whether 'the issues in the claim being certified and a claim that will remain pending in the trial court " 'are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.' " ' Schlarb[ v. Lee], 955 So.2d [418,] 419-20 [ (Ala. 2006) ] (quoting Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88, 95 (Ala. 2002), quoting in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala. 1987), and concluding that conversion and fraud claims were too intertwined with a pending breach-of-contract claim for Rule 54(b) certification when the propositions on which the appellant relied to support the claims were identical). See also Centennial Assocs.[ v. Guthrie], 20 So.3d [1277,] 1281 [ (Ala. 2009) ] (concluding that claims against an attorney certified as final under Rule 54(b) were too closely intertwined with pending claims against other defendants when the pending claims required 'resolution of the same issue' as issue pending on appeal); and Howard v. Allstate Ins. Co., 9 So.3d 1213, 1215 (Ala. 2008) (concluding that the judgments on the claims against certain of the defendants had been improperly certified as final under Rule 54(b) because the pending claims against the remaining defendants depended upon the resolution of common issues).
"Additionally, in considering whether a trial court has exceeded its discretion in determining that there is no just reason for delay, several United States Courts of Appeals have expressly considered whether the resolution of claims that remain pending in the trial court may moot claims presented on appeal. In MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849 (4th Cir. 2010), the United States Court of Appeals for the Fourth Circuit explained:
" 'In determining whether there is no just reason for delay in the entry of judgment, factors the district court should consider, if applicable, include:
" ' "(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim *613 which could result in a set-off against the judgment sought to be made final;[ ] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like."
" ' Braswell [Shipyards, Inc. v. Beazer E., Inc.], 2 F.3d [1331,] 1335-36 [ (4th Cir. 1993) ]... (quoting Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360, 364 (3d Cir. 1975) [overruled on other grounds by Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) ] ).
"....'
" 610 F.3d at 855 (emphasis added)."
Lighting Fair, 63 So.3d at 1263-64 (footnote omitted).
This court has before it only Kirby's complaint and amended complaints upon which to base an analysis of the propriety of the Rule 54(b) certification. Kirby alleged that Jack's was liable for the tort of outrage based on the following facts. Because Kirby seeks review of an order dismissing her tort-of-outrage claim under Rule 12(b)(6), Ala. R. Civ. P., I will recount those facts as if they are true. See Ussery v. Terry, 201 So.3d 544, 546 (Ala. 2016) (stating that, when considering whether a complaint is sufficient to withstand a motion to dismiss, an appellate court must take the allegations of the complaint as true).
Kirby injured herself in the line and scope of her employment with Jack's in late August or early September 2015. She reported her injury to her supervisor, Ann Long, later that same day. Long's body language and tone of voice conveyed to Kirby that Long was irritated or agitated that Kirby had suffered an injury. Kirby understood that Long did not wish to report the injury because that would end the restaurant's string of injury-free days.
Long did not file a first report of injury, despite having knowledge of Kirby's injury on the date it occurred. Kirby, who showed visible signs of a knee injury, including limping, complained of continued and increasing pain in her knee to Long over the next several weeks. She requested, in October 2015, that she be authorized to see a physician, after which Long informed Kirby that Long had not filled out a first report of injury within 48 hours of Kirby's injury and, therefore, that Kirby would not be able to seek workers' compensation medical benefits if she saw a physician.
Kirby sought treatment for her knee and learned that she needed surgery to repair her knee. When she explained her need for surgery and for leave from employment for the surgery to Long, Long informed her that she would need to discuss her need for leave with Sheila Parnell, an area supervisor for Jack's. As instructed, Kirby contacted Parnell, who told Kirby that she would not be eligible for leave for surgery until she had worked for Jack's for at least six months. According to Kirby, Parnell, despite having assured Kirby that she would assist her in arranging leave, refused to assist Kirby in arranging leave once Kirby had met the six-month requirement.
Parnell, once made aware that Kirby's injury was allegedly work-related, chided Kirby for failing to properly report the injury although that responsibility was Long's. Long informed Parnell that Kirby had timely reported her injury and that Long had failed to file the first report of injury. According to Kirby, Parnell informed Kirby in February 2016 that, because she had alleged that her injury was work-related and an investigation was being conducted, Kirby would have to see workers' compensation physicians and not her own physician. Long had admitted to *614 Kirby that Long had caused the delay in Kirby's medical treatment by failing to properly document and report Kirby's injury.
Kirby was informed in May 2016 that Jack's had declined to provide her medical treatment under its workers' compensation insurance plan; despite contacting Jack's corporate office as instructed, Kirby was never given a reason for the denial. Parnell then informed Kirby that if Kirby could not perform the duties of her employment, Kirby's employment with Jack's would be terminated. Kirby's employment was terminated in June 2016, by Parnell, who informed Kirby that her employment was terminated because Kirby could not perform the duties of her employment. Kirby described Parnell's demeanor during the discussions leading to her termination from employment as hateful and the content of the discussions as humiliating, degrading, and demoralizing.
Kirby has alleged that she has suffered extreme emotional distress as a result of being denied the medical treatment she needs for the injury to her knee. In her original complaint, she alleged that Jack's had
"intentionally and/or recklessly and/or wantonly caused [Kirby] to suffer severe emotional distress and mental anguish and severe pain and suffering by refusing, without good and valid reasons, to authorize reasonable and necessary medical treatment recommended and requested by [Kirby's] authorized treating healthcare professionals, [from] whom [Jack's] approved [Kirby] to seek treatment."
Her amended complaints contain more factually detailed allegations, but they essentially seek damages for the same emotional distress caused by the failure to provide medical treatment, which distress was caused by severe pain, the inability to earn a living, and depression over her situation. As noted by the majority opinion, Kirby also sought an award of workers' compensation benefits, including medical benefits, under the Alabama Workers' Compensation Act, codified at Ala. Code 1975, § 25-5-1 et seq. ; a penalty for the late payment of those benefits pursuant to Ala. Code 1975, § 25-5-59(b) ; and damages for retaliatory discharge under Ala. Code 1975, § 25-5-11.1.
The majority has concluded that the tort-of-outrage claim and the retaliatory-discharge claim " 'are so closely intertwined that separate adjudication [of those claims] would pose an unreasonable risk of inconsistent results.' " 240 So.3d at 610-11 (quoting Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala. 1987) ). I am not convinced by the majority's determination that the same unnamed facts underlie both the retaliatory-discharge claim and the tort-of-outrage claim. See id. Instead, I conclude that the determination of the underlying workers' compensation claim and Kirby's request for a penalty under Ala. Code 1975, § 25-5-59(b) ("If any installment of compensation payable is not paid without good cause within 30 days after it becomes due, there shall be added to the unpaid installment an amount equal to 15 percent thereof, which shall be paid at the same time as, but in addition to, the installment."), may well moot Kirby's tort-of-outrage claim. See Lighting Fair, 63 So.3d at 1265.
To succeed on a claim seeking damages for the tort of outrage, Kirby "must demonstrate that [Jack's] conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38, 44 (Ala. 1990). Our supreme court first recognized the tort of outrage in *615 American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980). Robert Inmon, the plaintiff, contended that his company's investigation of him and the resulting termination of his employment had been conducted in a manner so outrageous that he had been subjected to severe emotional distress. Inmon, 394 So.2d at 366-67. Our supreme court concluded that although
"the management of Inmon's investigation and termination may have been somewhat disorganized, and a humiliating experience for him personally, nevertheless American Road's behavior throughout cannot, as a matter of law, be characterized as 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' [Restatement (Second) of Torts §] 46, Comment (d), ... at 73 [ (1948) ]. As [Restatement (Second) of Torts §] 46, Comment (g), ... at 76 [ (1948) ] states:
" 'The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress....'
"And Comment (d), id. at 73:
" 'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities....' "
Inmon, 394 So.2d at 368 (emphasis added).
As noted above, when confronted with an order dismissing a particular claim that has been certified as final, our supreme court has considered whether the resolution of the claim or claims remaining in the trial court would moot the issue that would be considered on appeal. See Lighting Fair, 63 So.3d at 1265 ; see also Ragland v. State Farm Mut. Auto. Ins. Co., 238 So.3d 641 (Ala. 2017). If the dismissed claim is dependent on liability that may be resolved by a determination necessary to a claim that remains pending in the trial court, the certification of the order dismissing the claim as final for purposes of appeal has been held to be improper because the claim on appeal could become moot. See Lighting Fair, 63 So.3d at 1265. Although the tort of outrage does not require as part of its elements proof of a work-related injury, it is Kirby's work-related injury and Jack's refusal to provide Kirby's medical benefits to which she claims entitlement that form the factual basis of the tort-of-outrage claim. Any determination that Kirby did not suffer a work-related injury or that she was not entitled to workers' compensation benefits or medical treatment as a result of that injury could moot her claim asserting the tort of outrage because the refusal to pay for Kirby's medical treatment would then have been Jack's " 'insist[ance] upon [its] legal rights in a permissible way.' " Inmon, 394 So.2d at 368 (quoting Restatement (Second) of Torts § 46, Comment (g), at 76 (1948)). Furthermore, a determination that Jack's had a good-faith basis for contesting its liability for Kirby's injury would eradicate Kirby's claim for a penalty under the § 25-5-59(b). See Goodyear Tire & Rubber Co. v. Bush, 160 So.3d 787, 794 (Ala. Civ. App. 2014) (reversing an award of the statutory penalty when the employer had "presented substantial evidence to controvert the claim" and had therefore defended the claim with good cause), and Goodyear Tire & Rubber Co. v. Muilenburg, 990 So.2d 434, 439 (Ala. Civ. App. 2008) (same). Such determinations would negate Kirby's argument that the denial of medical benefits was, in fact, outrageous, thus rendering the tort-of-outrage claim moot.
*616 Based on the foregoing, I concur in the result.
Pittman, J., concurs.

The trial court entered similar orders disposing of Kirby's tort-of-outrage claims asserted against the other defendants and certified those orders as final and appealable pursuant to Rule 54(b) ; however, those orders are not at issue in this appeal.

Note from the reporter of decisions: This May 12, 2017, opinion was withdrawn and another opinion substituted for it on August 11, 2017. The quoted material appears in the substituted opinion.

Note from the reporter of decisions: This May 12, 2017, opinion was withdrawn and another opinion substituted for it on August 11, 2017. The quoted material appears in the substituted opinion.

Note from the reporter of decisions: This May 12, 2017, opinion was withdrawn and another opinion substituted for it on August 11, 2017. The quoted material appears in the substituted opinion.